McKinney, J.
delivered the opinion of the court.
This bill was brought to enforce the redemption of a tract of land lying in Hardin county, which was sold by the Marshal on the 21st day of June, 1845, as the property of Robert G. Allison, by virtue of an execution issued upon a judgment of the Federal Court for the District of West Tennessee, and was purchased at said sale, by the defendant Kerr, for the sum of forty dollars, who afterwards, viz, cn the 26th day of October, 1846, sold and conveyed the same to the defendant Davidson.
It appears, that after said sale, viz, on the 14th day of October, 1845, said Allison, who was indebted in a large amount to various merchants of the city of Baltimore, executed a deed of trust, by which he conveyed to the complainant, as trustee for the benefit of said creditors, among other things, “all his right, title and interest,” in and to the tract of land sold as aforesaid, containing about five hundred acres.
The bill alleges, that on the 9th day of October, 1846, the complainant, through his agent and attorney applied to the defendant Kerr, to redeem said tract of land, and tendered to him the amount of the redemption money; *727 but, that, although informed of said deed of trust executed to the complainant, he refused to receive the money, or to suffer a redemption thereof; and afterwards fraudu-ntly conveyed the same to defendant, Davidson. The redemption money was deposited with the clerk of the Federal Court for the District of West Tennessee. The defendants are non-residents, and the bill has been taken as confessed against them, and the cause regularly brought to hearing ex parte. The chancellor decreed for the complainant; and to reverse this decree, the defendants have prosecuted a writ of error to this court.
Two questions are presented for our determination; first, whether, since and by virtue of the process act of Congress of 1828, ch. 68, sec. 3, (Laws of the U. S., vol. 4, p. 279,) lands in this State, levied upon and sold by virtue of final process issued upon a judgment of the Federal Court, are subject to redemption under the act of 1820, ch. 11. And, second, if so, whether the complainant stands in such a relation as to be entitled to redeem the land in question.
1. The 3rd section of the act of Congress of 1828, ch. 68, provides, that “ writs of execution and other final process issued ton judgments and decrees, rendered in any of the courts of the United States, and the proceedings thereupon, shall be the same, except their style, in each State, respectively as are now used in the courts of such State,” &c.
It was held by this court, in the case of Polk and wife vs. Douglass and Cameron, (6 Yer. 209) that lands sold upon final process from the Federal Court, prior to the passage of the act of Congress of 1828, were not subject to redemption, under the laws of this State. And that decision was unquestionably correct in princi- *728 pie; because the act of Congress of 1792, which is similar in its provisions to the act of 1828, adopted only-such State laws, regulating the form and effect of process upon judgments in their courts as were in existence in 1789; and did not adopt or recognise the authority of any law or regulation of this character which might be afterwards passed by the States; nor did it apply to States subsequently admitted into the Union. Wayman vs. Southard, 10 Wheaton’s R. 1, (6 Con’d Rep. U. S. 1,) Bronson vs. Kinzie, 1 Howard’s Rep. U. S. 311, 324. It is obvious,' therefore, that the process acts of 1789 and and 1792, could have no application to this State, or to other States admitted into the Union after their passage; and this, perhaps, was the reason of the passage of the act of 1828. Under the latter act, we think, the question as to the right of redemption, admits of no doubt. It is certainly true, that the laws of a State regulating the process of its courts, its mode of execution, and its effect, furnish no rule for the courts of the United States, unless adopted by the latter. To Congress belongs the exclusive and absolute power of prescribing the form and effect of, and mode of proceeding on, executions issued upon judgments rendered in the courts of the United States. If this were not so, the judicial power of the federal government, would be altogether inadequate to the important purposes for which it was designed. But, instead of forming a uniform system regulating the process of the federal courts, varying from that of the State courts, Congress has deemed it the wiser policy to conform the process and modes of proceeding on executions upon judgments rendered in the United States’ Courts, to those of the several States. This policy was adopted, no doubt, in view of the various forms of process, *729 and different modes of proceeding to carry into effect their judgments, which existed in the several States. In some, the sale of real property, upon execution, was absolute and unconditional; in others, subject to redemption within a limited period; and again in others, it could not be sold at all, but was only liable to be extended upon an elegit. Other differences, in this respect, both in regard to real and personal property, existed in different States, which for the present purpose, need not be further noticed. It must have been foreseen therefore, by Congress, that the probable tendency of a uniform regulation, giving to the final process of the federal courts a form and effect variant from that of the State courts, would produce, perhaps, not infrequent collisions and conflicts between the Federal and State tribunals; which has, happily been avoided by the passage, from time to time, of the process acts above referred to.
The act of 1828, in the language of the Supreme Court of the United States in the case of Ross and others vs. Duval and others, (13 Peters’ Rep. 45, 53,) “adopts in specific terms, the execution laws of the States.” And in the case of Bronson vs. Kinzie and others, (1 Howard’s Rep. 325,) Mr. Justice McLean, says, “the settled policy of the Federal Government is, to adopt the State laws regulating final process. And so far as the acts of Congress have operated, State laws have governed executions in the Federal Courts.” And, again, in the case of the Bank, of the United States vs. Halstead, 10 Wheaton’s Rep. 51, (6 Cond. Rep. U. S. 22, 26,) the, court say, that the process acts of Congress adopt “the effect as well as the form of the State process.”
From these authorities, and, indeed, from the plain language of the act of Congress, it is too clear to admit *730 of donbt, that lands in this State, sold by virtue of process from the Federal Court, are subject to redemption, under the act of 1820, ch. 11, in precisely the same manner as if sold under final process of our courts. Again, the right to redeem land, sold under process of the Federal Courts, might perhaps be maintained upon the ground that the redemption law of 1820, prescribes a rule of property; and, therefore, by the 34th section of the judiciary act of 1789, furnishes the rule of decision. But it is not necessary to place the determination of the present case upon this ground, as the right is clear beyond all question, upon the former ground.
2. It is not contended, and cannot be, that the deed of trust was not operative' to vest in the complainant •all the equitable interest or estate in the tract of land in question, remaining in Allison after the execution sale. And if such transfer may be made, as most certainly it may, it necessarily follows, that the assignee is vested with all the rights and equities of the defendant in the execution whose land was sold. This, however, is not now to be regarded' as an open question; it was in effect, decided by this court in the case of Jones vs. The Planters’ Bank, 5 Humphreys 619; and still more recently and still more directly, in the case of Kennedy vs. Howard, 6 Humphreys 64. In the latter case it was held, that an assignment by title bond, after execution sale, vested the assignee with the equitable estate of the defendant in the execution, and clothed him with all the equities of the assignor; and entitled him to redeem from one holding the legal title in trust for the assignor, although the assignee had given no pecuniary consideration for the assignment. That case asserts a broader principle than is necessary to the *731 determination of the one under consideration. We are of opinion, therefore, that there is no error in the decree of the Chancellor, and direct that it be affirmed.